**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DESHANTA YOUNG,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LATOYA HUGHES, MICHAEL CRAIN, DEEDEE BROOKHART, JEREMIAH BROWN, BRANDON YOCKEY, MAJOR HINTON, LIEUTENANT VAUGHN, BRITTNEY JACKSON, and HEATHER CECIL,**<br><br>**Defendants.** | **Case No. 26-cv-827-RJD** |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Deshanta Young, an inmate of the Illinois Department of Corrections who is currently incarcerated at Hill Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center. In the Complaint, Young alleges that Defendants retaliated against him in violation of the First Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and the medical providers, to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these entities.

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**The Complaint**

In January 2023, Young received a notice that the book he purchased, Prison Stories, was denied because it was detrimental to the security of the prison (Doc. 1, p. 6). Young spoke to Lieutenant Vaughn, who was overseeing the administrative detention unit where Young was housed at the time, about the book being banned (*Id.*). It appears that Young acknowledged that the book encouraged physical violence, criminal activity, and unauthorized organizational activity (the basis for the ban), but argued that white prisoners were allowed white supremacy literature that encouraged lynching (*Id.*). And Young argued other security threat group (S.T.G.) material was allowed into the prison. Vaughn indicated that it was "just how things are run at Lawrence" and reminded Young that he was no longer in the North (*Id.* at pp. 6-7). Young pointed out that he was being discriminated against, but Vaughn warned him that if he kept pushing the issues he would not like the response (*Id.* at p. 7). Young took his statements as a threat.

Young filed a grievance regarding what he believed to be an equal protection violation, caused by publication review head Brandon Yockey's policies (Doc. 1, p. 7). While the grievance was still pending, Young received an August 2023 notice that his book was actually prohibited because his copy contained highlighter (*Id.*).

Young submitted letters to Major Hinton, who oversaw the administrative detention unit where Young was housed, and assistant warden Jeremiah Brown, inquiring as to why they kept changing the basis for the book ban (Doc. 1, p. 7). After he sent those notes, he received notice that his own self-authored book, titled The Making of True Blue, was also banned because it contained S.T.G. material (*Id.*). Young complained that the ban was retaliatory because of his complaints regarding the banning of Prison Stories (*Id.*). He wrote to Yockey, Vaughn, Hinton, and Brown claiming retaliation. He also wrote to DeeDee Brookhart to inform her that the publication review committee's actions were discriminatory. He also indicated that his book was actually a work of fiction he wrote as an outlet for mental stress and encouraged her to read the book so she could see that it did not meet the criteria for being banned (*Id.* at pp. 7-8). He never heard back on any of his notes.

Young also submitted several grievances both about the unequal treatment of his books and his belief that the bans were a form of retaliation. On September 19, 2023, he received notice that his book had been destroyed, less than 30 days after it was received at the prison and despite Young still having a grievance challenging the ban (Doc. 1, p. 8). Young alleges the quick destruction of his book was further evidence of Defendants' retaliatory motive (*Id.*). His self-authored book was later banned in all IDOC prisons, despite some inmates having already purchased and received the book (*Id.*). He believes the ban was implemented to hide the retaliatory motive of defendants (*Id.*).

## Preliminary Dismissals

Although Young names Brittney Jackson, Heather Cecil, Michael Crain, and Latoya Hughes as defendants in the case caption, he fails to include any allegations against them in his statement of claim. There are simply no allegations that these individuals were personally involved in the decision to ban Young's books. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under [Section] 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."). Thus, any potential claim against these individuals is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Fourteenth Amendment equal protection claim against Vaughn, Brandon Yockey, Hinton, Jeremiah Brown, and DeeDee Brookhart for banning Young's access to Prison Stories and The Making of True Blue while allowing white inmates to possess similar books that encouraged violence.**

**Count 2:** **First Amendment retaliation claim against Vaughn, Brandon Yockey, Hinton, Jeremiah Brown, and DeeDee Brookhart for denying Young access to his chosen reading material in retaliation for writing grievances and letters complaining about the book ban.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[2]

**Count 1**

"The Equal Protection Clause of the Fourteenth Amendment most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, … among others." *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010). The Fourteenth Amendment requires inmates to be treated similarly "unless unequal treatment bears a rational relation to a legitimate penal interest." *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). To state an equal protection claim, a plaintiff must demonstrate that "the defendants intentionally treated him differently because of his race." *Lisle v. Welborn,* 933 F.3d 705, 719 (7th Cir. 2019).

Here, Young alleges that his books were denied while white inmates were allowed materials that advocated lynching and other elements that were also present in Young's books. He also alleges that when he inquired of Vaughn as to why his book requests were treated differently than white inmate's requested books, he was reminded that he was "no longer in the North." Vaughn's response may suggest Young's books were denied because of his race.

Although Young alleges that his equal protection rights were violated by the ban of his books, there are no allegations to suggest that Vaughn, Hinton, Jeremiah Brown, or

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Brookhart participated in implementing the ban. He merely alleges that Vaughn was overseeing the administrative detention unit Young was housed in, and he inquired of Vaughn why the publication review committee would deny his book. Nothing in the pleading suggests that Vaughn actually participated in the denial of the books. Young does allege that the books were banned pursuant to Brandon Yockey's policies as head of the publication review. Thus, Young adequately alleges that Yockey violated his equal protection rights and Count 1 shall proceed against Yockey.

**Count 2**

But Young fails to adequately allege a retaliation claim in Count 2. To state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014). "The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). Young notes that he filed grievances and while those were pending his self-authored book was banned and his copy of Prison Stories was destroyed. Although he identifies the individuals that he wrote to, he fails to allege that any of these individuals actually participated in the banning or destruction of his books. Nor does he allege that any of them even received his letters and were aware of his complaints. He merely alleges that he felt the ban was retaliation for complaining (Doc. 1, p. 7). But his vague assertions are not enough to state a viable retaliation claim against any defendant. Thus, Count 2 is **DISMISSED without prejudice**.

## Motion for Counsel

In addition to his Complaint, Young also submitted a motion for the appointment of counsel (Doc. 3). He later submitted documents suggesting he tried to obtain counsel on his own (Doc. 12). Young notes that he is a high school graduate but fails to otherwise indicate his need for counsel in this case. But given the early stage of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[3] Further, there is nothing currently pending that would require counsel. Once defendant has been served and files an answer, the Court will enter a scheduling order setting forth the next steps in the litigation process. If Young experiences difficulties in litigating the case at that point, he may submit another request for counsel. At this time, his motion is **DENIED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Brandon Yockey. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Brandon Yockey: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

this Memorandum and Order to defendant's place of employment as identified by Young. If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If defendant can no longer be found at the work address provided by Young, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Young, the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Young is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court

will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 14, 2026**

**REONA J. DALY**
**United States Magistrate Judge**

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**